IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NORTHWEST CENTRE, LLC )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NATIONAL AMERICAN UNIVERSITY, )<br>a division of DLORAH, INC. )<br>)<br>Defendant. )<br>_____) | Case No. |

## COMPLAINT

Plaintiff, Northwest Centre, LLC, ("Northwest Centre" or "Landlord") for its cause of action against Defendant alleges and states as follows:

### NATURE OF ACTION

1.     Plaintiff is the owner of certain real estate located in Sedgwick County, Kansas. The property was leased to Defendants pursuant to a written lease agreement dated March 30, 2010. For the reasons explained below, Defendant breached that lease agreement in December, 2017. This action is to recover Plaintiff's damages under the lease and as allowable under Kansas law. Plaintiff, in the alternative, also seeks to recover from Defendant insurance proceeds received by it, the true purpose of which was to repair the tenant's improvements.

### THE PARTIES

2.     Plaintiff Northwest Centre is a Kansas limited liability company with a mailing address and principal place of business located at 8111 32nd St. North, Suite 101, Wichita Kansas 67226.

1

3.     Defendant National American University, a division of Dlorah, Inc. ("NAU" or "Tenant") is a South Dakota corporation, with a mailing address and principal place of business located at 5301 Mount Rushmore Road, Rapid City, South Dakota, 57701.

4.     NAU is registered to do business in the state of Kansas and may be served with process through its registered agent, Corporation Service Company, 2900 SW Wanamaker Drive Suite 204, Topeka, KS 66614.

## JURISDICTION AND VENUE

5.     NAU is a for-profit university offering a range of college degree programs which are predominately technical and professional degrees provided through online courses. Since approximately 2007, NAU has provided blended, online and onsite courses, at one or more physical campuses located in Wichita, Kansas.

6.     One of NAU's Wichita campuses was located at a commercial building center owned by Plaintiff and located at the intersection of 13th Street and Tyler.

7.     For the reasons alleged herein, including but not limited to, the allegations contained in Paragraphs 2 through 6, the Court has personal jurisdiction over the parties.

8.     The events giving rise to the claims occurred within the City of Wichita, making the United States District Court for the District of Kansas the proper venue for this suit pursuant to 28 U.S.C. § 1391(b)(2).

9.     As alleged herein, Plaintiff is a citizen of the state of Kansas; Defendant is a citizen of the state of South Dakota; and the amount in controversy exceeds $75,000.00. Thus, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

GENERAL ALLEGATIONS

10.     Plaintiff is the owner of a commercial building located at 8428 W. 13th St. N.,
Wichita, Kansas 67226 (the "Building").

11.     On March 30, 2010, Plaintiff and Defendant entered into a written lease agreement
which is incorporated by reference herein (the "Lease").

12.     Pursuant to the Lease, Plaintiff agreed to lease Suites 110 and 120 in the Building
to Defendant (the "Leased Premises") for an initial term of 125 months (the "Initial Lease Term").

13.     The Lease and Building were managed for the Landlord by Occidental
Management, Inc.

14.     The Lease required Defendant to pay Plaintiff a fixed minimum rent ("Base Rent")
in accordance with the following schedule:

| Lease Term | Rate Per Sq. Ft. | Monthly Rent | Yearly Rent |
|---|---|---|---|
| Months 1-5 | $0.00 | $0.00 | $0.00 |
| Months 6-17 | $9.50 | $5,234.50 | $62,814.00 |
| Months 18-29 | $9.50 | $5,234.50 | $62,814.00 |
| Months 30-41 | $10.00 | $5,510.00 | $66,120.00 |
| Months 42-53 | $10.00 | $5,510.00 | $66,120.00 |
| Months 54-65 | $10.50 | $5,785.50 | $69,426.00 |
| Months 66-77 | $10.50 | $5,785.50 | $69,426.000 |
| Months 78-89 | $11.00 | $6,061.00 | $72,732.00 |
| Months 90-101 | $11.00 | $6,061.00 | $72,732.00 |
| Months 102-113 | $11.50 | $6,336.50 | $76,038.00 |
| Months 114-125 | $11.50 | $6,336.50 | $76,038.00 |
| Total | | | $694,260.00 |

15.     In addition to the Base Rent, Defendant was obligated to pay its proportionate share
of common area maintenance ("CAM") expenses, real estate taxes, and property insurance for the
Building of which the Leased Premises was a part. (Article 34).

16.     As relevant to this lawsuit, the Lease contained the following terms:

a. "The Leased Premises shall be used by Tenant for educational purposes, including academic, administrative, and other associated activities." (Lease, Article 5(a)).

b. "Tenant shall keep the Leased Premises open for business continuously during all regular and customary hours for such type of business . . . ." (Lease, Article 7).

c. "Tenant shall keep the Leased Premises in a clean and safe condition" (Article 5(c)); "permit no waste, damage or injury to the Leased Premises" (Article 5(g)); and, "during the entire term of the Lease keep in good order, condition and repair the Leased Premises and every part thereof, including, but not limited to . . . fixtures, interior walls, storefront(s), floors, ceilings, sides . . . all electrical facilities and lighting fixtures, lamping, fans and electrical motors, all other appliances and equipment of every kind and nature" (Article 11(a)). "Tenant's obligations shall include . . . the obligation to replace when necessary, any of the items required to be maintained by Tenant at its sole cost and expense." *Id.*

d. "[i]f Tenant shall at any time fail to perform any of the covenants on its part to be made or performed under this Lease," Landlord was permitted, "but not obligated" to so perform. "All expenses incurred by Landlord in connection therewith shall be deemed additional rent. . . ." (Lease, Article 17).

e. If the Leased Premises were "damaged by fire or other casualty, the damage shall be repaired by and at the expense of Landlord . . . ." (Lease, Article 20(a)). "If such repairs cannot be made within ninety (90) days . . . . Landlord may, at its option, make them within a reasonable time, and in such event this Lease shall

continue in effect and the rent shall be abated . . . . Landlord's election to make repairs must be evidenced by a written notice to Tenant within (30) days after the occurrence of the damage." (Lease, Article 20(b)).

f. Importantly, only in the event Landlord did not "elect to make such repairs which cannot be made within ninety (90) days," did Tenant have the right to "cancel the lease." *Id.*

g. In the event of default by Tenant, Landlord was entitled "at its election then or at any time thereafter to pursue any one or more of following remedies in addition to all other rights or remedies provided herein at law or in equity:" (Lease, Article 24).

h. Such remedies included, the right to "re-enter the Leased Premises, take possession of all buildings, improvements, additions, alterations, equipment and fixtures thereon . . . ." (Lease, Article 24(a)).

i. "In any case and whether or not the leased Premises or any part thereof be relet, Tenant shall pay to Landlord all sums required to be paid by Tenant up to the time of re-entry by Landlord, and thereafter Tenant shall, if required by Landlord pay to Landlord until the end of the term of this Lease the equivalent amount of all rent and other charges required to be paid by Tenant under the terms of the Lease, less proceeds of any such reletting during the term of the Lease, if any, after payment of the expenses of Landlord as aforesaid, and the same shall be due and payable on the several rent days herein specified." *Id.*

17.     During the term of the Lease, Plaintiff provided property insurance for the Building and Defendant insured, among other things, the lease improvements and its personal property.

18.     On November 25, 2017, a fire occurred in the Building in a space adjacent to the Leased Premises, resulting in damages to the Leased Premises.

19.     Following the fire, Plaintiff and Defendant worked with disaster restoration companies and construction contractors in conjunction with the insurance companies providing coverage for their respective losses, to begin making repairs to the Leased Premises and the Building.

20.     Notwithstanding that repairs were being made to the Building and Leased Premises, on December 20, 2017, Mike Buckingham, a representative of NAU and Paul Sedlacek, NAU's general counsel, told Plaintiff that it would not reoccupy the Leased Premises. According to NAU, this was a decision that had been made by its Board of Directors.

21.     On December 21, 2017, Plaintiff notified NAU, in accordance with Article 20(b) of the Lease, of its intent to repair the Leased Premises. Said letter is incorporated by reference herein.

22.     The same day, NAU confirmed in writing that it would not reoccupy the Leased Premises and would be permanently consolidating both of its Wichita campuses to a single location in 2019. Said letter is incorporated by reference herein.

## COUNT I: BREACH OF LEASE AGREEMENT

23.     Plaintiff incorporates by reference the statements and allegations of each of the above paragraphs as if fully set forth herein.

24.     Individually or collectively, the telephone call on December 20, 2017 and letter dated December 21, 2017, had the legal effect of a repudiation and anticipatory breach of the Lease.

25.     Acting in accordance with its rights under the Lease, on December 22, 2017, Plaintiff re-entered the Leased Premises and took possession thereof.

26.     Following Defendant's breach of the lease agreement, Plaintiff, in an effort to mitigate its damages, searched for potential tenants to relet the Leased Premises. On March 20, 2019, Plaintiff entered into a new lease agreement with Starkey, Inc.

27.     As a direct result of Defendant's breach of the Lease as described above, Plaintiff has and will suffer damages, including without limitation, those outlined in this Complaint, or otherwise due and owing to Plaintiffs pursuant to the terms of the Lease and at law, including but not limited to, the following as of the date of this Complaint:

| | | |
|---|---|---|
| j. | Unpaid Rent: | $ 170,515.98 |
| k. | Tenant's Repairs: | $   80,279.63 |
| | Total: | $ 250,795.61 |

28.     The unpaid rent damages set forth in Paragraph 27, includes Plaintiff's damages for unamortized improvements and unamoratized lease commissions. It also credits Defendant the following: Rent between November 26, 2017 and March 26, 2018, during which the Leased Premises were being restored to a condition sufficient to allow occupancy; $ 3,467.60 for the second half of June 2019, when Starkey, Inc. took over the Leased Premises; and, $ 6,501.80 per month thereafter through the end of Defendant's Lease term. The monthly credits represent the difference between Defendant's monthly Rent through the end of the Lease Term and the rents Plaintiff is entitled to receive under the terms of the lease agreement with Starkey, Inc.

29.     Pursuant to the terms of the Lease, Plaintiff is also entitled to its costs, expenses, and reasonable attorneys' fees in connection to this action.

30.     Plaintiff has performed each and every condition precedent to the bringing of this action and all conditions precedent have occurred.

## COUNT II (IN THE ALTERNATIVE): UNJUST ENRICHMENT

31.     Plaintiff incorporates by reference the statements and allegations of each of the above paragraphs as if fully set forth herein.

32.     Based on communications with Defendant and insurance loss estimates furnished to Plaintiff, Defendant received $ 64,962.34 in insurance proceeds for damages caused by the fire to the tenant improvments and/or the Leased Premises, which was not paid over to Plaintiff or otherwise used to make repairs.

33.     Defendant had knowledge that these insurance proceeds were paid to cover damages to the Leased Premises and/or tenant improvements and were intended to be used for purposes of repairing those items as Defendant was required to do under the terms of the Lease and Kansas law.

34.     Notwithstanding that Defendant had knowledge that the insurance proceeds were intended to be used for repairs, Defendant has retained possession of the same. As a result of Defendant's continued retention of the insurance proceeds, Plaintiff has incurred additional expenses.

35.     Defendant has benefited from its continued retention of the insurance proceeds and, for the reasons stated above, it would be inequitable for Defendant to continue to retain this benefit without payment of the same to Plaintiff.

WHEREFORE, Plaintiff requests that the Court issue judgment against the Defendant in the amount of $  250,795.61, or, in the alternative, $64,962.34, for pre-and post-judgment interest at the maximum rate permitted by law, for costs and expenses of this action, including without limitation on Plaintiff's attorneys' fees, and for such other and further relief as the Court deems just and proper.

FLEESON, GOOING, COULSON & KITCH, L.L.C.

By: /s/ **Charles E. Millsap**
   Charles E. Millsap (#9692)
   Nathaniel T. Martens (#27179)
   Fleeson, Gooing, Coulson & Kitch, L.L.C.
   1900 Epic Center
   301 N. Main
   Wichita, Kansas 67202
   Tel: (316) 267-7361
   Fax: (316) 267-1754
   Email: cmillsap@fleeson.com
   nmartens@fleeson.com

## JURY DEMAND

Plaintiff, Northwest Centre, LLC, respectfully demands a trial by jury on all issues herein.